**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**ORAL NICHOLAS HILLARY,**

                **Plaintiff,**

            v.

**VILLAGE OF POTSDAM et al.,**

                **Defendants.**
_____

**8:17-cv-659
(GLS/DJS)**

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Barket, Epstein & Kearon Aldea & LoTurco, LLP<br>666 Old Country Road, Suite 700<br>Garden City, NY 11530 | ALEXANDER ROBERT KLEIN, ESQ.<br>BRUCE A. BARKET, ESQ.<br>DONNA ALDEA, ESQ. |
| Office of Mani C. Tafari<br>445 Hollow Road, Suite 25<br>Melville, NY 11747 | MANI C. TAFARI, ESQ. |
| **FOR THE DEFENDANTS:**<br>*Village of Potsdam, Village of Potsdam Police Department, & Mark Murray*<br>Johnson Laws, LLC<br>646 Plank Road, Suite 205<br>Clifton Park, NY 12065 | GREGG T. JOHNSON, ESQ.<br>APRIL J. LAWS, ESQ.<br>COREY A. RUGGIERO, ESQ.<br>LORAINE CLARE JELINEK, ESQ. |
| *Unidentified Jane/John Doe Village Of Potsdam Employees #31-40* | NO APPEARANCES |

*Onondaga County &*
*William Fitzpatrick*
Onondaga County DepartmentJOHN E. HEISLER, JR., ESQ.
of Law
John H. Mulroy Civic Center
421 Montgomery Street, 10th Floor
Syracuse, NY 13202

*Unidentified Jane/John Doe #41-50*
*New York State Police Employees*NO APPEARANCES

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Oral Nicholas Hillary brings this action against defendants Village of Potsdam, Village of Potsdam Police Department, Mark Murray, Onondaga County, William Fitzpatrick, John and Jane Doe defendants, and others that have been dismissed, alleging violations of his First, Fourth, and Fourteenth Amendment rights pursuant to New York State law and 42 U.S.C. § 1983.  (Compl., Dkt. No. 1.)  Pending is Murray's motion for summary judgment.  (Dkt. No. 178.)  For the following reasons, the motion is granted.

## II. **Background**[1]

In February 2018, Murray moved to dismiss Hillary's complaint as against him, (Dkt. No. 70), which the court granted in part and denied in part, allowing the following claims to proceed against Murray: a violation of the Equal Protection Clause of the Fourteenth Amendment under a theory of selective prosecution; retaliatory prosecution in violation of the First Amendment; due process and stigma-plus defamation; and conspiracy, (Dkt. No. 83 at 59-60).

Murray now moves for summary judgment on the remaining claims asserted against him. (Dkt. No. 178, Attach. 13.) In response, Hillary opposes Murray's motion only as to his claim alleging a Section 1983 violation of the Equal Protection Clause of the Fourteenth Amendment. (Dkt. No. 185.) Accordingly, because Hillary does not oppose the entry of summary judgment on three out of the four remaining claims against Murray, and Murray's arguments regarding such claims are facially meritorious, the following claims are dismissed as against Murray:

---

[1] Unless otherwise noted, the facts are undisputed. Given the two lengthy decisions that have been issued in this litigation, (Dkt. Nos. 83, 170), as well as one in the earlier filed case, (No. 7:12-cv-01669, Dkt. No. 84), the court assumes the parties' familiarity with the underlying facts. A full recitation of the facts can be found in the court's February 28, 2019 Memorandum-Decision and Order. (Dkt. No. 83 at 4-12.)

conspiracy; retaliatory prosecution in violation of the First Amendment; and due process and stigma-plus defamation.  (Compl. ¶¶ 195-208, 222-27, 228-33, 234-40); *see Johnson v. Lew*, No. 1:13-CV-1072, 2015 WL 4496363, at *5 & n.6 (N.D.N.Y. July 23, 2015).

Insofar as Murray's motion for summary judgment is concerned, the following facts are relevant to Hillary's equal protection claim.  Hillary testified to driving to, and parking his blue Honda CRV in, the Potsdam High School parking lot on the date that the victim (hereinafter "GP") died for only a few minutes before leaving the parking lot; he did not exit his vehicle while parked there; there was video footage that depicted his blue Honda CRV presented during his criminal trial in connection with GP's homicide; and he possessed a key to GP's apartment in the past until September 2011.  (Def.'s Statement of Material Facts (SMF) ¶¶ 15, 37-40, 42, Dkt. No. 178, Attach. 14.)

Hillary is not aware of any action Murray took concerning Hillary that was based on Hillary's national origin.  (*Id.* ¶ 26.)  However, the parties dispute whether Murray took action based on Hillary's ethnicity and race. (*Id.* ¶¶ 25, 27; Pl.'s SMF ¶¶ 25, 27, Dkt. No. 185, Attach. 42.)  Hillary maintains that Murray "targeted, arrested, strip searched, helped indict,

perp-walked, withheld exculpatory information from, tanked investigations in favor of, and testified against . . . Hillary—but not the similarly situated [w]hite counterpart, John Jones, and he engaged in this targeting based in part upon the color of [Hillary's] skin." (Pl.'s SMF ¶ 25.) According to Hillary, his "indictment and prosecution were based upon and natural outgrowths of this selective treatment." (*Id.*)

## V. Standard of Review

The standard of review under Fed. R. Civ. P. 56 is well settled and will not be repeated here. For a full discussion of the governing standard, the court refers the parties to its prior decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. Discussion

Murray argues that summary judgment is appropriate as to the selective prosecution claim because Hillary has failed to show that Hillary and Jones were similarly situated, and has failed to "proffer any direct or circumstantial evidence that [Hillary's] race (or national origin or ethnicity) motivated" Murray's involvement in the investigation of Hillary. (Dkt. No. 178, Attach. 13 at 9.) In response, Hillary contends that he and Jones

were similarly situated, were treated differently, and whether that treatment was motivated by race is a question of fact that should be decided by a jury. (Dkt. No. 185 at 16.)

To prevail on an equal protection claim based on the theory of selective prosecution, a plaintiff must allege that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (citation omitted). "A plaintiff cannot merely rest on a demonstration of different treatment from persons similarly situated." *Id.* (internal quotation marks and citations omitted). "Instead, he must prove that the disparate treatment was *caused by* the impermissible motivation." *Id.* (internal quotation marks and citation omitted).

In arguing that Hillary and Jones were not similarly situated and that Murray was not motivated by Hillary's race during the investigation, Murray provides several reasons why Hillary was investigated. (Dkt. No. 178, Attach. 13 at 9.) For example, Murray explains that Hillary was an "obvious person of interest" based on his familiarity with GP and GP's mother, his "physical ability to accomplish the second-story escape from the homicide

6

scene," and because Hillary was among "prospects for entering [GP's] apartment without force." (*Id.* at 9.) Murray also contends that Hillary was a target because he had a "hostile relationship" with and "motive to eliminate [GP] who . . . stood in the way of [a] continued romance with [GP's] mother," showed a "lack of cooperation" with police, "stalk[ed]" GP in his car, and had a "flawed alibi theory." (*Id.*)

In response, Hillary contends that many of these circumstances also apply to Jones, and that many of Murray's "allegations are simply wrong." (Dkt. No. 185 at 18-24.) According to Hillary, he and Jones were similarly situated because they had similar backgrounds—they both served in the United States military, had athletic careers, and had a long-term and live-in relationship with GP's mother. (*Id.* at 16-17.) Each of them had a key to GP's home, each of their relationships with GP's mother ended prior to GP's death, they were both seen in GP's vicinity shortly before his death, and they "both had alibis that strongly cut against the likelihood that they were responsible for [GP's] death." (*Id.* at 17-18.)

Assuming, without deciding, that Hillary and Jones were similarly situated, Hillary has failed to come forward with admissible evidence to support the notion that Murray's conduct was motivated by Hillary's race.

7

Hillary's arguments in that regard are unavailing. He asserts the following: the Potsdam Police Department has no black officers; "the only other [b]lack people associated with this case were Hillary's lawyer, his daughter, and the mother of his children"; when Officer Mark Wentworth was asked about racial bias trainings at the Potsdam Police Department, he answered, "I don't remember any"; Jones was allowed to be present in Murray's office with GP's mother right after GP's death; and, "[i]f Hillary's race were not a factor in targeting him, then one would expect a race-neutral explanation for why he was targeted so quickly, narrowly and extensively whereas Jones was scarcely suspected of wrongdoing at all." (*Id.* 24-26.)

These assertions are largely irrelevant and specious. Hillary's burden requires him to offer admissible evidence that demonstrates that *Murray's conduct* in connection with the investigation and prosectuion was motivated by Hillary's race. Racism in the air, or a lack of diversity in the Village of Potsdam or its police department — which is the sum total of Hillary's attempt to show a triable issue of fact — is insufficient. *See Callwood v. City of Kingston*, No. 1:15-cv-1298, 2020 WL 2838602, at \*22 (N.D.N.Y. 2020) (finding allegations that the defendants referred to the

8

plaintiff's religion "as a cult that participated in human trafficking" and "used a reprehensible racial slur against" the plaintiff to be sufficient to demonstrate a triable issue of fact); *McLoughlin v. Rensselaer Cty. Dep't of Soc. Servs.*, No. 1:18-CV-0487, 2019 WL 3816882, at *13 (N.D.N.Y. Aug. 14, 2019) (finding that "conclusory statements" that the defendant's treatment of the plaintiff was "motivated by . . . racial animus and bias" were insufficient to maintain a selective enforcement equal protection claim).

Accordingly, Murray's motion for summary judgment is granted, and all remaining claims against him are dismissed.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Murray's motion for summary judgment (Dkt. No. 178) is **GRANTED**; and it is further

**ORDERED** that all claims against Murray are **DISMISSED**; and it is further

**ORDERED** that the Clerk shall terminate Murray from this action; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

September 24, 2021
Albany, New York

Gary L. Sharpe
U.S. District Judge